UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MENACHEM ADLER, *individually and on behalf of all others similarly situated*,

                                        Plaintiff,

         v.

PENN CREDIT CORPORATION,

                                        Defendant.

No. 19-CV-7084 (KMK)

OPINION & ORDER

Appearances:

Joenni Abreu, Esq.
Jonathan M. Cader, Esq.
Craig B. Sanders, Esq.
Barshay Sanders, PLLC
Garden City, NY
*Counsel for Plaintiff*

Richard J. Perr, Esq.
Monica M. Littman, Esq.
Kaufman Dolowich & Voluck, LLP
Philadelphia, PA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

         Plaintiff Menachem Adler ("Plaintiff") brings this putative Class Action against Penn Credit Corporation ("Defendant"), alleging that Defendant engaged in unlawful credit and collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.  (*See* Compl. (Dkt. No. 1).)  Before the Court are Defendant's and Plaintiff's dueling Motions for Summary Judgment.  (Def.'s Not. of Mot. (Dkt. No. 52); Pl.'s Not. of Mot. (Dkt. No. 58).)  For the following reasons, Defendant's Motion is granted and Plaintiff's Motion is denied.

I.  Background

A.  Factual Background

The following facts are drawn from the Parties' statements pursuant to Local Civil Rule

56.1, specifically Defendant's 56.1 Statement (Def.'s 56.1 Statement ("Def.'s 56.1") (Dkt.

No. 53)), Plaintiff's 56.1 Statement (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 61)),

Defendant's Counterstatement to Plaintiff's Rule 56.1 Statement (Def.'s Rule 56.1

Counterstatement ("Def.'s Counter 56.1") (Dkt. No. 65)), Plaintiff's Counterstatement to

Defendant's Rule 56.1 Statement (Pl.'s Rule 56.1 Counterstatement ("Pl.'s Counter 56.1") (Dkt.

No. 72)), and the admissible evidence submitted by the Parties.[1]  The facts as described below

are in dispute only to the extent indicated.

Plaintiff is a "citizen of the State of New York residing in Spring Valley," and a

"consumer," as defined by 15 U.S.C. § 1692a(3).  (Pl.'s 56.1 ¶¶ 1–2; Def.'s Counter 56.1 ¶¶ 1–

2.)  Defendant is a "debt collector," as defined by 15 U.S.C. § 1692a(6).  (*Id.* ¶ 3.)

Defendant has claimed that Plaintiff owes a debt arising out of a "delinquent utility bill."

(Pl.'s 56.1 ¶ 1; *see also* Def.'s Counter 56.1 Ex. 1, at 9 (Dkt. No. 65-1).)[2]  "On or about

November 20, 2018, Suez New York placed Plaintiff['s] . . . account of $122.14 (the 'Account')

---

[1] "Where possible, the Court has relied on the undisputed facts in the Parties' 56.1 Counterstatements, evincing agreement.  However, direct citations to the record have also been used where relevant facts were not included in any of the Parties' Rule 56.1 submissions, where the Parties raise genuine disputes, or where the Parties did not accurately characterize the record."  *Verizon Wireless of E. LP v. Town of Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *1 n.1 (S.D.N.Y. Jan. 31, 2022).

[2] Defendant attached multiple exhibits to its 56.1 Counterstatement, several of which themselves have exhibits.  Defendant included a copy of Plaintiff's Complaint, including the Complaint's Exhibit 1, as Exhibit A to Defendant's Motion.  (Dkt. No. 65-1.)  For ease of reference, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page for each exhibit.

in collections with [Defendant]."  (Def.'s Counter 56.1 ¶ 5.)  "On May 19, 2019, [Defendant] transmitted an electronic request to its letter vendor, RevSpring, to prepare and send a collection letter to Plaintiff."  (Def.'s 56.1 ¶ 3; Pl.'s Counter 56.1 ¶ 3.)[3, 4]

The Payment Letter sent to Plaintiff states "REQUEST FOR PAYMENT" in large font just below the letterhead and includes Defendant's name, hours, and phone number on the top left corner.  (*See* Payment Letter.)  The Payment Letter then reads, in substantive part:

> Failure to contact our office leads us to believe that you do not have intentions of resolving your just debt.
>
> If you are unable to pay in full, settlements and/or payment arrangements may be available.  We will do our best to work with you.
>
> Please contact our office today, or go online to account.penncredit.com, or send a payment in full in the enclosed envelope.
>
> This letter is from a debt collection agency.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

---

[3] Plaintiff objects to the inclusion of this fact in Defendant's 56.1 Statement, asserting that this fact is not "material."  (Pl.'s Counter 56.1 ¶ 3.)  However, Plaintiff states that, subject to this objection, "this statement is not disputed."  (*Id.*)  Given that Plaintiff "does not clearly deny these facts in his response, but rather claims that [the fact's inclusion] is 'immaterial' and fails to cite to the record," "the Court deems [this] fact[] admitted."  *O'Donnell v. Card*, No. 11-CV-3297, 2013 WL 3929632, at *2 n.9 (S.D.N.Y. July 30, 2013); *see also Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, No. 18-CV-6712, 2021 WL 1225447, at *1 n.1 (S.D.N.Y. Mar. 31, 2021) ("Where the [p]arties identify disputed facts but with semantic objections only or by asserting irrelevant facts, [the Court will not consider] these purported disputes, which do not actually challenge the factual substance described in the relevant paragraphs, . . . as creating disputes of fact." (collecting cases)).

[4] A redacted copy of the letter was filed as Exhibit A to the Complaint.  (*See* Compl. Ex. 1 ("Payment Letter"), at 1 (Dkt. No. 1-1) (hereinafter "the Payment Letter" or "the Letter")); *see also* Def.'s Counter 56.1 ¶ 7 ("admit[ting] that a true and correct copy of the Letter with redactions is attached to Plaintiff's Complaint as Exhibit A.").)  An unredacted copy of the letter was submitted to the Court under seal at Dkt. No. 79-1.  For the reasons stated in Defendant's Memorandum of Law in Support of its Motion to Seal, namely the protection of Plaintiff's personal financial information, (*see* Dkt. No. 56), the Court granted Defendant's Motion and allowed Defendant to file certain exhibits, including the unredacted Letter, in its moving papers under seal, (*see* Dkt. Nos. 79, 80).

(*Id.*)  The Payment Letter notes that Plaintiff owed $122.14 for a "delinquent utility bill" with a "service date" of July 22, 2016.  (*Id.*)

The bottom portion of the Payment Letter is a detachable coupon (the "Coupon"), (*id.*). The Coupon states in capitalized font: "DETACH AND RETURN WITH PAYMENT TO EXPEDICT CREDIT TO YOUR ACCOUNT."  (*Id.*)  The following address is listed on the left side of the Coupon: P.O. Box 1259, Department 91047, Oaks, PA 19456 (the "Oaks Address"). (*Id.*)  To the right of this address is a blank area for a debtor—namely, Plaintiff—to manually enter his or her credit card information, and a directive that reads, "Visit http://account.penncredit.com to pay your bill online." (*Id.*)  Below this information, the Coupon explains procedures related to payments by check, and under this statement, Plaintiff's address appears on the left, and the following address appears on the right, under an "ID Number," the date of the letter, and the label "PENN CREDIT": 2800 Commerce Drive, P[.]O[.] Box 69703, Harrisburg, PA 17106-9703 (the "Harrisburg Address").  (*Id.*)

The Payment Letter also directs the recipient to the "reverse side for important information concerning [his or her] rights." (*Id.*)  The reverse side reads:

> Please be advised that in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and misleading debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse or harass.

(*See* Decl. of Scott Astheimer ("Astheimer Decl.") Ex. G, at 3 (Dkt. No. 79-5).)[5] Subsequently, the reverse side informs receipients—in this case, Plaintiff—about a debt collector's right to sue the recipient to collect the debt, but notes that certain additional

---

[5] Plaintiff did not include the back of the Payment Letter as an exhibit to the publicly-filed Complaint; instead, Defendant included this portion of the Payment Letter as an exhibit to the sealed Astheimer Declaration.

state or federal laws protect certain types of income from attachment.  (*See id.*)  Finally,

there are additional notices made pursuant to state law.  (*See id.*)

      The letter was mailed "in an envelope that contained two glassine windows."  (Def.'s

56.1 ¶ 16; Pl.'s Counter 56.1 ¶ 16.)[6]  The Parties dispute what else may have been included in

this letter, however.  Specifically, Defendant states that "[w]hen RevSpring mailed the Letter it

also included a return envelope, which has one glassine window and is marked BRE-104-E-0."

(Def.'s 56.1 ¶ 18.)  To substantiate this fact, Defendant cites to the Declaration of Scott

Astheimer, a representative of RevSpring.  (*See id.* (citing Astheimer Decl. ¶ 23, Ex. B).)

Plaintiff parries this assertion, though, by stating that Astheimer's Declaration is "entirely

conclusory," failing to "establish that any such return envelopes were included with *this* Letter."

(Pl.'s Counter 56.1 ¶ 18 (emphasis in original).)  This dispute extends to the exact nature of the

return envelope, as Defendant avers that "[w]hen the detachable payment slip portion of the

letter is placed in the return envelope, only the address clearly marked: 'PENN CREDIT 2800

Commerce Drive PO Box 69703 Harrisburg PA, 17106-9703' is visible."  (Def.'s 56.1 ¶ 20.)

Plaintiff, on the other hand, reiterates his response concerning the conclusory nature of the return

envelope's inclusion in the first place.  (Pl.'s Counter 56.1 ¶ 20.)

      "Plaintiff called Defendant three times [to] inquire[] about the alleged debt" on

November 18, 2018, May 13, 2019, and May 23, 2019.  (Pl.'s Counter 56.1 ¶ 23; *see also*

---

[6] Plaintiff objects to this statement of fact, too, but this time only offers an argumentative objection: "disput[ing] [the fact] to the extent that the Letter fails to indicate that the Oaks, PA Address does not belong to Defendant but, in fact, belongs to RevSpring."  (Pl.'s Counter 56.1 ¶ 16.)  This response "interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts."  *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013).  In so doing, Plaintiff's response "fails to controvert a fact so set forth in [Defendant's] Rule 56.1 statement, [and] that fact will be deemed admitted."  *Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir. 2003).

Declaration of Jonathan Cader ("Cader Decl.") Ex. 1, at 9 (Dkt. No. 71-1) (Defendant's Interrogatory Answers to Question 15).)[7]  Plaintiff has submitted no evidence that he ever attempted to send anything in the mail to Penn Credit.  (*See* Def.'s 56.1 Ex. D (Redacted Deposition Transcript of Menachem Adler), 84:18–85:9 (Dkt. No. 53-4).)

On May 28, 2019, Plaintiff spoke with Defendant "on the telephone and arranged for a payment of $122.14 to be made on May 29, 2019."  (Def.'s 56.1 ¶ 25.)[8]  Thereafter, Defendant mailed a letter dated May 29, 2019 to Plaintiff, confirming Plaintiff's payment.  (*Id.* ¶ 30.)[9]

B.  Procedural History

Plaintiff filed his Complaint on July 30, 2019.  (Dkt. No. 1.)  Defendant filed a motion to dismiss on January 10, 2020.  (Not. of Mot. (Dkt. No. 22); Mem. of Law in Supp. of Mot. (Dkt. No. 23); Aff. of Thomas Perrotta (Dkt. No. 23-1).)  On January 31, 2020, Plaintiff filed a Response.  (Pl.'s Mem. in Opp'n to Mot. (Dkt. No. 24).)  On February 7, 2020, Defendant filed its Reply.  (Def.'s Reply Mem. in Further Supp. of Mot. (Dkt. No. 25).)  On August 3, 2020, the Court issued an Opinion & Order denying Defendant's motion.  (Op. (Dkt. No. 26).)  The Court

---

[7] This exhibit includes multiple sections with non-consecutive paragraph numbering.  For ease of reference, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

[8] Plaintiff objects to Defendant's statement on the basis of materiality and form, but fails to substantively dispute the content of the statement.  (*See* Pl.'s Counter 56.1 ¶ 29.)  Because "56.1 statements not explicitly denied by [a] plaintiff are deemed admitted," the Court does not view Plaintiff's objections as raising a substantive dispute of fact.  *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011).

[9] Once more, Plaintiff objects to Defendant's statement of fact to this effect on the basis of immateriality.  As noted, this does not create a dispute of fact.  *See, e.g., Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citing *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012)).

held "that Plaintiff has stated a plausible claim under the FDCPA and that it cannot dismiss the Complaint at this early stage." (*Id.* at 12.)

On April 9, 2021, Defendant filed its Motion for Summary Judgment and accompanying papers. (*See* Def.'s Not. of Mot.; Def.'s 56.1; Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (Dkt. No. 54).)  On the same day, Plaintiff filed his Motion for Summary Judgment and accompanying papers. (*See* Pl.'s Not. of Mot.; Decl. of Menachem Adler ("Adler Decl.") (Dkt. No. 59); Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (Dkt. No. 60); Pl.'s 56.1.)

On May 18, 2021, Defendant filed its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and a Counter to Plaintiff's Rule 56.1 Statement. (*See* Def.'s Mem. in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Opp. Mem.") (Dkt. No. 64); Def.'s Counter 56.1.)  The next day, Plaintiff filed parallel papers. (*See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp. Mem.") (Dkt. No. 70); Decl. of Jonathan M. Cader ("Cader Decl.") (Dkt. No. 71); Pl.'s Counter 56.1.)

On June 1, 2021, the Parties filed reply memoranda of law in support of their respective motions. (*See* Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply Mem.") (Dkt. No. 73); Pl.'s Reply Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Reply Mem.") (Dkt. No. 74).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v.*

*John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary

materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the [C]ourt is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quoting *Wilson v. NW Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

"Where, as here, cross motions for summary judgment are filed, [courts] 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)); *see also Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) ("When both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting

*Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017))); *Estate of Smith v. Cash Money Records, Inc.*, No. 14-CV-2703, 2018 WL 2224993, at *3 (S.D.N.Y. May 15, 2018) ("On dueling motions for summary judgment, the court must evaluate each party's motion on its merits and determine whether either is entitled to judgment as a matter of law." (citing *Coutard*, 848 F.3d at 114)).

B.  Analysis – Standing

Defendant puts forth two distinct arguments, either of which would entitle it to summary judgment: (1) that Plaintiff lacks standing to assert a claim under the FDCPA, and (2) that the Payment Letter is not deceptive as a matter of law, in part because any deceptiveness that could be found is immaterial, meaning Defendant did not violate the FDCPA.  (*See generally* Def.'s Mem.; Def.'s Opp. Mem.; Def.'s Reply Mem.)  Plaintiff disputes both of these arguments, arguing that he has standing to bring the suit and that the letter is, in fact, deceptive.  (*See generally* Pl.'s Opp. Mem.)

Plaintiff, conversely, argues that he is entitled to summary judgment because the law of the case doctrine mandates that the Court, having previously determined that Plaintiff plausibly alleged a violation of the FDCPA vis-à-vis the Payment Letter's deceptiveness, must maintain its position and once again side for Plaintiff.  (*See* Pl.'s Mem. 7–9.)  Defendant points to the Court's prior opinion, which noted that questions of fact could have laid to rest questions of whether the Payment Letter was materially misleading.  (*See* Def.'s Opp. Mem. 7–8 (citing Op. 12–13).)  The Court addresses these arguments as needed.

1.  Traditional Principles of Standing

Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues.  This inquiry involves both constitutional limitations on federal-

court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498

(1975).

> Constitutional standing requires (1) that the plaintiff ha[s] suffered an "injury in
> fact"—that is, "an invasion of a legally protected interest which is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that
> there is "a causal connection between the injury and the conduct" of which the
> plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by
> a favorable decision."

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (second

alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).[10]

   The degree to which a plaintiff must establish standing also changes at different stages of

the litigation.  The Supreme Court has explained:

> At the pleading stage, general factual allegations of injury resulting from the
> defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that
> general allegations embrace those specific facts that are necessary to support the
> claim."  [*Lujan v.*] *National Wildlife Federation*, [] 497 U.S. [871,] 889 [(1990)].
> In response to a summary judgment motion, however, the plaintiff can no longer
> rest on such "mere allegations," but must "set forth" by affidavit or other evidence

---

[10] The question of Plaintiff's standing was not briefed at the motion to dismiss stage.
(*See generally* Op.)  However, "[t]he question of standing is not subject to waiver," *United States
v. Hays*, 515 U.S. 737, 742 (1995), and "because the question of standing goes to the constitution
limitations on the 'judicial Power of the United States,' which is limited to resolving 'Cases' or
'Controversies,' [courts] are entitled at any time . . . to delve into the issue of standing," even sua
sponte," *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State
Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quotation marks and citation
omitted) (quoting U.S. Const. art. III); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47,
56 (2d Cir. 2016) (explaining that the issue of standing "may be raised by a party, or by a court
on its own initiative, at any stage in the litigation" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S.
567, 571 (2004))); *cf. Partner Reinsurance Co. Ltd. v. RPM Mortg.*, Inc., No. 18-CV-5831, 2020
WL 2904862, at *3 (S.D.N.Y. June 3, 2020) (denying the defendants' motion to dismiss for lack
of subject matter jurisdiction, but noting that the defendants had a "right to argue that [the
plaintiff] lacks contractual standing to pursue the relief sought here in a later motion for
summary judgment or bench trial"); *accord Conservation L. Found., Inc. v. ExxonMobil Corp.*,
— F. Supp. 3d — , 2021 WL 6066432, at *1 (D. Mass. Dec. 22, 2021) ("[S]tanding can be raised
at any time.  For example, if a motion to dismiss for lack of standing is denied, a case may
nevertheless be properly dismissed for lack of standing on a motion for summary judgment or
after trial." (citation omitted) (citing *P.R. Tel. Co. v. T-Mobile P.R. LLC*, 678 F.3d 49, 57 (1st
Cir. 2012))).

"specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.

*Lujan*, 504 U.S. at 561 (first alteration in original); *see also Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 425 (S.D.N.Y. 2021) (same).  In other words, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (italics omitted); *accord People To End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1, 8 (1st Cir. 2003) ("As litigation progresses, Article III places an increasingly demanding evidentiary burden on parties that seek to invoke federal jurisdiction.  A plaintiff who has standing at the motion to dismiss stage, does not automatically have standing at the summary judgment or trial stage.").

### 2.  *TransUnion*, *Maddox*, and Concrete Injury

The Supreme Court recently expounded on the concept of constitutional standing in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), putting the bottom line up front: "No concrete harm, no standing," *id.* at 2200.  Justice Kavanaugh, writing for the majority, explained: "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id.*

In *TransUnion*, a class of 8,185 plaintiffs alleged that the credit reporting agency TransUnion violated the Fair Credit Reporting Act ("FCRA") by failing to use reasonable procedures to ensure that their respective credit files, which TransUnion maintained, were accurate.  *See id*.  Specifically, these 8,000 plus plaintiffs asserted that TransUnion's shortcomings led the company to place flags on the plaintiffs' credit files that inaccurately

flagged them as a "potential match" to persons identified as "specially designated nationals" who threaten America's national security by the Treasury Department's Office of Foreign Assets Control ("OFAC"). *See id.* 2200–02. The Supreme Court split up the plaintiffs: one the one hand, there were those "whose [credit] reports were disseminated" to third-parties with the inaccurate flags and who suffered a harm "associated with the tort of defamation," *id.* at 2208–09, thereby conferring standing; on the other hand, there were the remaining plaintiffs whose credit reports were never disseminated, and who lacked standing because "[p]ublication is 'essential to liability' in a suit for defamation," *id.* at 2209 (quoting Restatement of Torts § 577, Comment a, at 192). The Supreme Court ruled that absent a showing that the latter portion of individuals were harmed in any other way, they could not move forward. *See id.* at 2209–13.

Late last year, the Second Circuit issued its first opinion analyzing the reach and implications of *TransUnion*. *See generally Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58 (2d Cir. 2021) ("*Maddox II*").[11] There, the Second Circuit withdrew a pre-*TransUnion* opinion in which the court had held that the bare violation of New York's satisfaction-of-mortgage statutes via "a lender's delay in recording the satisfaction of a mortgage" created an injury in fact in the form of the creation of "a cloud on title of real estate," which, alone, gave rise to constitutional standing. *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436 (2d Cir. 2021) ("*Maddox I*"), *opinion withdrawn and superseded on reh'g*, 19 F.4th 58 (2d Cir. 2021). Pursuant to *TransUnion*, the Second Circuit in *Maddox II* held that because the mortgagor-plaintiffs failed to allege that any reputational harm (including or in addition to any

---

[11] *Maddox* was the second occasion the Second Circuit had to cite *TransUnion*, *see Bank v. U.S. Dep't of the Treasury*, No. 19-3977, 2021 WL 5022645, at *2 (2d Cir. Oct. 29, 2021) (summary order), but as a summary order, *Bank* did not substantially evaluate and analyze the reach of *TransUnion*, *see id.*

adverse credit reporting) or monetary harm actually occurred during the lender-defendant's delay in recording the satisfaction of the mortgage, the plaintiffs lacked standing.  *See Maddox II*, 19 F.4th at 64–65.[12]

District courts in the Second Circuit applying *TransUnion* and *Maddox*, tellingly, demand concrete examples of harm.  For example, in *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022), a court dismissed claims for violations of New York Labor Law where the plaintiff was not paid in a timely manner because, "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing."  *Id.*  Another court recommended the dismissal of claims for lack of standing where the plaintiffs failed to identify imminent or substantial risk of harm via identify theft following a large data breach.  *See In re Practicefirst*

---

[12] The Second Circuit has not yet expounded significantly on *TransUnion* following *Maddox*.  Rather, the Circuit has only cited *TransUnion* a handful of other times in summary orders for basic propositions regarding future speculative harms.  *See, e.g.*, *James v. Willis*, No. 21-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (summary order) (citing *TransUnion* in dismissing the plaintiffs for lack of standing—first raised on appeal—where the plaintiffs' alleged harms were a collective and unified fear that they would be subject to further attacks as a result of alleged discrimination by corrections officers); *Bates ex rel. United States v. Trump*, No. 21-1533, 2022 WL 453397, at *1 (2d Cir. Feb. 15, 2022) (summary order) (citing *TransUnion* for the general idea that "injury in fact that is concrete, particularized, and actual or imminent" is necessary to confer standing).  In the only applicable decision, the Circuit heard an appeal from a plaintiff whose FDCPA case was dismissed after the district court found that the plaintiff failed to state a claim.  *See Faehner v. Webcollex, LLC*, No. 21-1734, 2022 WL 500454, at *1 (2d Cir. Feb. 18, 2022) (summary order).  The Circuit refused to hear the merits of the case and remanded it so as "to allow [the] plaintiff an opportunity to replead her claims to comport with the pleading standards set out in *TransUnion*, and to give the district court an opportunity to address any standing questions in the first instance."  *Id.*  This lone summary order does not constitute binding precedent, both because it lacks substantial analysis and because, per Second Circuit Rules, "[r]ulings by summary order do not have precedential effect," 2d Cir. Local Rule 32.1.1.(a).

*Data Breach Litig.*, No. 21-CV-790, 2022 WL 354544, at *6 (W.D.N.Y. Feb. 2, 2022) (report and recommendation).

By contrast, in *Panebianco v. Selip & Stylianou, LLP*, No. 21-CV-5466, 2022 WL 392229, at *1 (E.D.N.Y. Feb. 9, 2022), a court upheld standing where a complaint and summons were posted to the "plaintiff's apartment door without enclosing in it [sic] an envelope or otherwise concealing it." *Id.* Because the plaintiff's tenants saw the complaint as a direct result of this open-air posting, the court found that the plaintiff did have standing because he alleged that the defendant's action "caus[ed] [the] plaintiff humiliation and grief and violat[ed] his right to privacy" as well as other state and federal statutes regarding privacy in financial dealings. *Id.*

Most importantly, the cases in the Second Circuit brought in the context of financial credit—including claims specifically brought pursuant to both the FDCPA and the FCRA, "an analogous statute," *Sputz v. Alltran Fin., LP*, No. 21-CV-4663, 2021 WL 5772033, at *6 (S.D.N.Y. Dec. 5, 2021)—have uniformly held that, absent specific evidence of reputational or monetary harm, plaintiffs lack standing under *TransUnion*. In *Williams v. Portfolio Recovery Assocs., LLC*, Nos. 21-CV-5656, 21-CV-5662, 21-CV-5968, 21-CV-5970, 2022 WL 256510 (E.D.N.Y. Jan. 27, 2022), the court remanded the plaintiffs' FDCPA claims due to lack of subject matter jurisdiction where "no actual tangible harm was alleged" by the plaintiffs. *Id.* at *3. In that case, the plaintiffs' inaccurate credit data (and related information) was provided by the defendant to a third-party vendor, but because the furnishing of information to only the third party vendor did not rise to the harms required for defamation or public disclosure of private facts, the court reasoned that the plaintiffs had not alleged sufficient harms to support subject

matter jurisdiction. *See id.* (citing *Sputz*, 2021 WL 5772033, at *3).[13]  Indeed, "sister courts, within and without the Second Circuit, have dismissed FDCPA actions invoking [this] theory for lack of Article III standing," particularly following *TransUnion* and its progeny, including *Maddox*. *Ciccone v. Cavalry Portfolio Servs., LLC*, Nos. 21-CV-2428, 21-CV-3764, 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (citing *In re FDCPA Mailing Vendor Cases*, — F. Supp. 3d — , 2021 WL 3160794, at *5–6 (E.D.N.Y. July 23, 2021) and *Shields v. Prof. Bureau of Collections of Md., Inc.*, No. 20-CV-2205, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021)).

This conclusion has also been reached in the FCRA context.  The court in *Zlotnick v. Equifax Info. Servs., LLC*, — F. Supp. 3d — , 2022 WL 351996 (E.D.N.Y. Feb. 3, 2022), held that "conclusory assertions" of "mental and emotional pain," without more, cannot confer standing, *id.* at *2; *see also Grauman v. Equifax Info. Servs., LLC*, No. 20-CV-3152, 2021 WL 3239865, at *5 (E.D.N.Y. July 16, 2021) (dismissing FCRA claims post-*TransUnion*, though pre-*Maddox*, for lack of standing where the plaintiff's "pleadings do not state that he has been damaged by any risks of financial or reputational harm, such as fears that his credit report would soon be disseminated").

The mental and emotional harms required under *TransUnion* (and *Maddox*) are even clearer when shown in contrast to other FDCPA actions in which, post-*TransUnion*, courts have found that plaintiffs did have standing.  For example, post-*TransUnion*, a district court found that a plaintiff had standing to bring an FDCPA claim where the defendant-debt collector's actions threatened home foreclosure, as the plaintiff alleged she was forced to "endure damages [stemming

---

[13] *Sputz*, though decided shortly after *Maddox*, does not mention, let alone rely upon, that case in its analysis, relying solely upon *TransUnion*.  *See Sputz*, 2021 WL 5772033, at *3–5.

from] fear of losing the [p]roperty, worry about where her loved ones will live, anxiety about being kicked out and becoming homeless, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, and other mental and emotional distress." *Benjamin v. Rosenberg & Assocs., LLC*, No. 19-CV-3012, 2021 WL 3784320, at *6 (D.D.C. Aug. 26, 2021) (second alteration in original) (quotation marks omitted).  In other words, the specific, and overt mental anguish suffered by the plaintiff in *Benjamin* was a far cry from speculative or unspecified future harms.[14]

### 3.  Applying *TransUnion* and *Maddox*

#### a.  Mental / Emotional Harm

In this case, Plaintiff puts forward no corroborated assertions relating to mental or emotional anguish in his Complaint; Plaintiff only states in his declaration that he was "confused," (Adler Decl. ¶¶ 7, 8, 9, 10), "frustrated," (*id.* ¶ 12), and "worried that Penn Credit would lodge a negative credit report against [him]," (*id.*).  Plaintiff goes beyond these threadbare assertions—but just barely—in his deposition; Plaintiff stated in his deposition that he sustained an unspecified number of headaches at unspecified frequencies or intervals, but only took an unspecified amount of "Tylenol and [went] to bed" to mollify any headaches his confusion apparently caused.  (*See* Unredacted Deposition Transcript of Menachem Adler ("Adler Tr."), at

---

[14] Moreover, the *Benjamin* plaintiff could point to specific monetary damages she incurred as a result of the debt collector's actions.  *See id.* (noting that the plaintiff incurred legal fees to stave off the foreclosure action).  Hiring legal counsel has indeed conferred standing elsewhere to plaintiffs in FDCPA actions following *TransUnion*.  *See, e.g.*, *Fleming v. ProVest California LLC*, No. 21-CV-4462, 2021 WL 6063565, at *7 (N.D. Cal. Dec. 22, 2021) (concluding the plaintiff had standing where, after becoming aware of a state debt dollection action against him, he "sought the assistance of legal counsel," recognizing that even prior to *TransUnion*, "[c]ourts have held that legal costs spent defending debt collection actions qualify as more than the mere risk of harm" (collecting cases)).

90:23–91:9 (Dkt. No. 79-3).)[15]   Plaintiff also confirmed in his deposition that he never sought medical treatment as a result of such headaches.  (*Id.* at 94:21–25.)

These assertions, while slightly more colorful than those in his declaration, remain too vague, lacking the requisite "specific facts" to establish the injury-in-fact at this stage of the litigation.  *Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence '*specific facts*,' which for purposes of the summary judgment motion will be taken to be true." (emphasis added) (quoting Fed. R. Civ. P. 56(e))).  Just as the Second Circuit held against the plaintiff in *Maddox II*, Plaintiff failed to offer any detailed "reason *why* [Defendant's actions] would cause great stress, mental anguish, anxiety, and distress," 19 F.4th at 66 (emphasis added) (quotation marks omitted), particularly when contrasted with other instances in which mental and emotional harms were plainly evident, *see Benjamin*, 2021 WL 3784320, at *6.  Thus, Plaintiff's "perfunctory [and unsupported] [claim] of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly [demonstrate] constitutional standing."  *Maddox II*, 19 F.4th at 66.

Moreover, even if Plaintiff's assertions were sufficiently detailed, "a non[-]moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment."  *Wheeler v. Kolek*, No. 16-CV-7441, 2020 WL 6726947, at *8 (S.D.N.Y. Nov. 16, 2020) (quoting *Walker v. Carter*, 210 F. Supp. 3d

---

[15] The portions of Adler's transcript that were initially redacted included information that did not fall within the category of "subject matter [that] is traditionally considered private rather than public."  *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).  Given the "common law right of public access to judicial documents . . . firmly rooted in our nation's history," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), the Court need not redact portions of its Opinion citing or quoting the redacted portions of Adler's transcript.

487, 503 (S.D.N.Y. 2016)).[16]  Accordingly, Plaintiff cannot establish purely emotional or mental

harms to establish standing on the basis of his deposition alone.  *See Hawkins v. N.Y. State Office*

*of Mental Health*, No. 17-CV-649, 2019 WL 4520801, at *12 (S.D.N.Y. Sept. 19, 2019)

(concluding that the "[p]laintiff's own self-serving statements, in her affidavits, memoranda, and

deposition," were insufficient to survive the defendant's summary judgment motion because the

statements were "all self-serving statements uncorroborated by any additional evidence"

(collecting cases)), *aff'd*, 845 F. App'x 9 (2d Cir. 2021); *see also Deebs v. Alstom Transp., Inc.*,

346 F. App'x 654, 656 (2d Cir. 2009) (summary order) ("[T]he only 'evidence' cited in [the]

plaintiffs' brief is their own self-serving testimony . . . .  Such evidence is insufficient to defeat

summary judgment."); *cf. Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y.

Sept. 8, 2016) (finding that "[the] [p]laintiff's 'self-serving' and 'incomplete' testimony . . . is

insufficient to create a genuine dispute of fact" (emphasis omitted)).

### b.  Monetary and Reputational Harm

Plaintiff, while not so stating in his affidavit or Complaint, alludes to monetary and

reputational harms, either of which could give rise to standing.  *See TransUnion*, 141 S. Ct. at

2200 (identifying "monetary harm, or various intangible harms including (as relevant here)

reputational harm" as potentially conferring standing).  However, given Plaintiff's

inconsistencies and lack of detail or evidentiary support with respect to each potential toehold,

the Court cannot consider either as sufficient, in light of the stage of litigation, to confer

---

[16] Such self-serving statements are also insufficient grounds to grant summary judgment
in Plaintiff's favor.  *See, e.g.*, *Garcia v. Serpe*, No. 08-CV-1662, 2012 WL 380253, at *7 (D.
Conn. Feb. 6, 2012) ("The Court is not persuaded that [the defendant's] self-serving and
conclusory affidavit is sufficient evidence to warrant granting summary judgment [in the
defendant's favor]"); *Gonzalez v. El Acajutla Rest., Inc.*, No. 04-CV-1513, 2007 WL 869583, at
*7 (E.D.N.Y. Mar. 20, 2007) (refusing to grant summary judgment for a party on the basis of the
party's sufficiently "self-serving and conclusory" affidavit).

standing.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d. Cir. 2005) (finding that "the [d]istrict [c]ourt did not err in granting [the] defendants' motion for summary judgment on the basis that [the plaintiff's] [deposition] testimony—which was largely unsubstantiated by any other direct evidence—was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint").

In his deposition, Plaintiff states that "there were people who didn't want to do business with [him] because [he] had an account that was with a collection agency." (Adler Tr. 91:10–13.)  However, when asked to identify those individuals in the very next question, Plaintiff stated: "I don't remember [who] right now, but they were my friends." (*Id.* at 91:15–16.)  When pressed moments later, Plaintiff stated: "It's confidential.  It's my friend.  It's confidential.  I don't remember exactly." (*Id.* at 92:8–9.)  In other words, Plaintiff's story changed over the course of successive questions in the deposition as to the number of individuals—plural versus singular—who found out about this alleged piece of mail as well as whether the individual(s) could not be identified for sake of confidentiality or a failure to recall.

Plaintiff also implied that this unnamed or forgotten friend's (or friends') decision to forego lending the money was a direct result of the friend learning of this account, describing the decisionmaking process as follows: "I pick up my mail and somebody sees it and says 'Penn Credit.'  [The friend] says, 'What is this?'  And he says, 'Oh, take care, goodbye,' something like this." (*Id.* at 92:2–5.)  Once again, though, Plaintiff immediately contradicts his own

testimony saying that "[t]he fact is that he didn't want to loan me money *and then he saw it*, so I guess there is a connection."  (*Id.* at 92:20–22 (emphasis added).)[17]

Finally, Plaintiff's inconsistencies and vagueness carried through with respect to why he wanted to secure the loan.  When asked his reason for seeking a loan, Plaintiff responded: "It's confidential.  Maybe I wanted to buy stocks, maybe I wanted to go into partnership with other people.  I don't remember right now but whatever it is, it's confidential."  (*Id.* at 94:11–14.)  In sum, Plaintiff failed to keep his story straight with regard to every aspect of the potential loan: his lender, the amount, its purpose, and its connection, if any, to the debt balance.  Instead, he hid behind some amorphous claim of confidentiality to avoid providing any consistent details regarding how he was at all harmed by Defendant.

In other FDCPA cases, plaintiffs have been deemed monetarily injured where evidence shows "specific plans to invest [his] money" such that the plaintiff's credit report would be requested imminently and a defendant-debt collector's inaccurate statements would have a direct effect.  *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014), *cert. denied*, 577 U.S. 819 (2015); *cf. Rosario*, 2022 WL 198503, at *3 (concluding that "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing").  Plaintiff's undetailed, internally inconsistent, and uncorroborated assertions in this vein fail to withstand scrutiny.  Thus, given the Second Circuit's statement in *Maddox* that adverse effects on a credit score alone that could

---

[17] As discussed *infra*, Plaintiff fails to articulate what was communicated to this unnamed individual (or individuals) regarding Penn Credit, meaning it is uncertain as to whether any potential investment opportunity was actually foiled by the person learning of Penn Credit and Plaintiff's credit balance.

make it difficult to obtain financing do not confer standing where "it is not alleged that this purported risk materialized," 19 F.4th at 65, Plaintiff has not demonstrated any monetary harms to establish his standing.

Plaintiff's inconsistencies and vagueness with respect to any reputational harms once again foretell his downfall for several reasons. First, any harms that may have befallen Plaintiff with regard to his reputation are of his own making. Plaintiff, of his own volition, chose to discuss Penn Credit as well as the contents of his letter with his unspecified friend(s). (*See* Adler Tr. 92:2–5.) But to allege a harm caused by the debt collector defendant, Plaintiff must show that it was Defendant's actions that caused his harm. *See Panebianco*, 2022 WL 392229, at *1 (conferring standing where defendant posted complaint and summons to the "plaintiff's apartment door without enclosing in it [sic] an envelope or otherwise concealing it").

Second, Plaintiff failed to detail what, if anything, he told this unnamed would-be investor that would have, in fact, caused his reputational harm, (*see* Adler Tr. 90:23–92:22). *Cf. Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence '*specific facts*,' which for purposes of the summary judgment motion will be taken to be true." (emphasis added) (quoting Fed. R. Civ. P. 56(e))).

Third, Plaintiff cannot state a harm akin to the tort of public disclosure of private facts— referred otherwise as publicity given to private life—given that a small number of people, at most, would have learned of Plaintiff's private debt information. *See* Restatement (Second) of Torts § 652D, Comment a (1977) (defining "[p]ublicity" as "[a] matter . . . made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . . . Thus it is not an invasion of the

22

right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."); *cf. Sherr v. HealthEast Care Sys.*, 262 F. Supp. 3d 869, 881 (D. Minn. 2017) ("In addition to its conclusory nature, the allegation that information was disseminated to a community of 35–40 individuals does not constitute publicity.").

Fourth, notwithstanding these infirmities, Plaintiff relies solely on his deposition and cannot point to a single piece of evidence to corroborate his inconsistent story, which is insufficient to defeat summary judgment. *See supra* (citing *Wheeler*, 2020 WL 6726947, at *8 (collecting cases); then citing *Hawkins*, 2019 WL 4520801, at *12; and then citing *Deebs*, 346 F. App'x at 656; and then citing *Khudan*, 2016 WL 4735364, at *5).

As Plaintiff has not demonstrated any concrete injury sufficient to support standing under the Second Circuit's precedent in *Maddox*, the Court lacks subject matter jurisdiction over this Action. *See Ciccone*, 2021 WL 5591725, at *3 (finding that, where the plaintiffs "have not sufficiently alleged a concrete injury in fact sufficient to confer Article III standing" arising out of alleged FDCPA violations, "the Court lacks jurisdiction over these claims"). Accordingly, the Court need not address the substantive merits of Plaintiff's claims, as it must grant Defendant's Motion and deny Plaintiff's Motiondismissing Plaintiff's claim. *See Hurley v. Tozzer, Ltd.*, No. 15-CV-2785, 2018 WL 1087946, at *2–3 (S.D.N.Y. Feb. 26, 2018) (granting the defendant's motion for summary judgment finding that the plaintiff failed to allege facts sufficient to confer standing); *Tabbs v. New Rochelle Neighborhood Revitalization Corp.*, No. 94-CV-4753, 1995 WL 546950, at *2 (S.D.N.Y. Sept. 14, 1995) (same); *see also Arbaugh v. Y&H Corp.*, 546 U.S.

500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").[18]

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.  The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 52, 58), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED:      March 11, 2022
            White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

[18] Plaintiff initially sought certification of the Action as a class action.  (*See* Compl. ¶¶ 51–57.)  However, "Counsel for Plaintiff represented to this Court during a conference on February 25, 2021 that Plaintiff is not pursuing his class action claims."  (Def.'s Mem. 5 n.1.) Thus, having found that it lacks subject matter jurisdiction over Plaintiff individually, the Court need not delve into class action concerns or those of other potential plaintiffs.